707 So.2d 827 (1998)
Arthur WAGNER, III, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3444.
District Court of Appeal of Florida, First District.
February 26, 1998.
Rehearing Denied April 3, 1998.
*828 Nancy A. Daniels, Public Defender; Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Daniel A. David, Assistant Attorney General, Tallahassee, for Appellee.
LAWRENCE, Judge.
Arthur Wagner III (Wagner) seeks review on direct appeal from his convictions and sentences in two cases of sale of cocaine within 1000 feet of a school, and one case of sale of cocaine. Wagner asserts that the trial court erred in: (1) denying his motion for judgment of acquittal, (2) admitting into evidence a videotape of the alleged drug buys, (3) restricting Wagner's cross-examination of Robert Duncan, the officer in charge of the investigation, (4) granting consolidation of the charges for trial, and (5) imposing a seventy-five year sentence for selling a twenty-dollar rock of crack cocaine as constituting cruel and unusual punishment under article I, section 17, of the Florida Constitution. We affirm.
*829 The facts of this case are as follows. Officer Duncan, an investigator with the Special Investigations Division of the Bay County Sheriff's Office, on December 15, 1995, enlisted the aid of a female confidential informant to make drug purchases. The informant made the purchases from an automobile equipped with a hidden video camera which provided a view of the driver's window. Officer Duncan gave a detailed explanation as to the installation and operation of the camera. He explained the manner in which he mounted a Sony recording device in the trunk of a county-owned vehicle, attached by wire to a camera and microphone positioned on the rear window tray of the vehicle. The camera and lens were covered by a blanket containing a small hole through which the camera lens protruded. He further testified that he tested the apparatus and that it was in good order and was working properly during the time of the drug investigation.
The vehicle was searched and the informant was strip-searched by a female employee before the informant was sent to the purchase area. No contraband or currency was found. Officer Duncan then gave the informant twenty dollars, turned on the video recorder, verbally recorded the date and time, and sent the informant to the purchase area along 16th street. Officer Duncan followed the informant in a separate vehicle, but when approaching Wagner's area on 16th street, he diverted his vehicle to a course on 17th street, parallel with the informant's vehicle. He observed the informant during most of her travel to and from the purchase area, but did not observe the actual transaction for fear of being detected. The videotape showed that the informant stopped the car and remained seated when Wagner approached her and conversed with her through the driver's window. Wagner, within a few seconds of his approach, handed the informant something and she handed him what appeared to be United States currency. The informant, upon return to a prearranged location, presented Officer Duncan with a twenty-dollar rock of cocaine. Officer Duncan then turned off the video camera. After waiting for approximately thirty minutes, Officer Duncan turned the video camera back on, verbally recorded the time and date, gave the informant another twenty dollars, and sent her back to the same area where she made the first purchase. The informant once again returned with a rock of cocaine. This process was repeated a third time under the same circumstances and with the same results. The drug transactions thus ended with three separate purchases of crack cocaine under virtually identical circumstances,[1] occurring over a total period of approximately one hour, and all occurring within the same block on 16th street. The three transactions were videotaped on one reel of tape, and the audio portion reflected the date and time of each of the three transactions.
The informant, after the conclusion of the drug purchases, again was strip-searched by a female employee and the vehicle was searched by Officer Duncan. No contraband or money was found on the informant, or in the vehicle.
At the close of the investigation, Officer Duncan retrieved the videotape from the recording device and kept it in his exclusive custody and control until he presented it to the trial judge at the appropriate time for viewing. There was no evidence that the tape had been altered, edited, or tampered with in any way.
The jury, at trial, was permitted to view the visual portion of the video tape, but was not allowed to hear the audio portion. A witness for the State identified the person on the videotape as Wagner. The informant was unavailable and did not testify.[2] The jury found Wagner guilty of two counts of the sale of cocaine within 1000 feet of a school, and of one count of the sale of cocaine. The trial judge sentenced Wagner, as an habitual violent felony offender, to seventy-five years in prison on the first count, seventy-five years in prison on the second *830 count, and to thirty years in prison on the third count, to run concurrently.

I.

Admissibility of Videotape
We first address the issue relating to the admissibility of the videotape, since it is critical to Wagner's argument concerning the sufficiency of the evidence. The admissibility of photographic evidence falls within the trial court's discretion; the court's decision will not be overturned absent a showing of abuse. Thompson v. State, 565 So.2d 1311, 1314 (Fla.1990); Patterson v. State, 513 So.2d 1257, 1260 (Fla.1987). Wagner argues that the videotape was not properly authenticated because there was no "pictorial testimony" offered. He argues that it was incumbent upon the State to offer testimony of the informant or some other witness who could testify that, based upon his or her personal knowledge, the tape fairly and accurately portrayed the incidents reflected thereon.
Authentication under the "pictorial testimony" theory is one means of authenticating a photograph or videotape; it is not however the exclusive means of authentication. Under the "silent witness" theory, photographic evidence may be admitted upon proof of the reliability of the process which produced the photograph or videotape. As Professor Wigmore explains:
With later advancements in the art of photography, however, and with increasing awareness of the manifold evidentiary uses of the products of the art, it has become clear that an additional theory of admissibility of photographs is entitled to recognition. Thus, even though no human is capable of swearing that he personally perceived what a photograph purports to portray (so that it is not possible to satisfy the requirements of the "pictorial testimony" rationale) there may nevertheless be good warrant for receiving the photograph in evidence. Given an adequate foundation assuring the accuracy of the process producing it, the photograph should then be received as a so-called silent witness or as a witness which "speaks for itself."
John Henry Wigmore, 3 Evidence in Trials at Common Law, § 790, at 219-20 (Chadbourn rev.1970); see also 2 McCormick on Evidence § 214, at 15 (John William Strong ed., 4th ed.1992). The Florida Supreme Court, in Hannewacker v. City of Jacksonville Beach, 419 So.2d 308 (Fla.1982), has adopted the "silent witness" theory of admissibility, but has not elaborated on the procedure to be followed for authentication under this theory.
We find the treatment of the "silent witness" theory by the courts of other states instructive. The Court in Litton v. Commonwealth, 597 S.W.2d 616 (Ky.1980), in a pharmacy burglary case, approved the admission into evidence of three photographs taken by an automatic camera while the burglary was in progress. The court held that the photographs were properly authenticated based on the pharmacy owner's testimony that the burglary alarm system was activated upon closing the business and that the camera could be started by a number of magnetic switches connected to a motion detector. The pharmacy owner also identified the background in the photographs as being an accurate representation of his store.
The court in State v. Bunting, 187 N.J.Super. 506, 455 A.2d 531 (App.Div. 1983), held that a film from a surveillance camera, depicting the robbery of a store, was properly authenticated where the state introduced testimony describing the installation and view of the camera, operation of the camera, testing of the camera, removal of the film, and the chain of custody of the film after removal. The court in Fisher v. State, 7 Ark.App. 1, 643 S.W.2d 571 (1982), held that a videotape depicting the defendant stealing groceries from the back of a store was properly authenticated where the store manager testified that he had previously positioned the camera to view the back door of the store, loaded and started the camera, checked to see that it was working properly, changed the tape two hours later, and had continuous custody of the tape. The manager also testified that the tape had not been tampered with and that there were no gaps in the tape. Further, once the camera had been activated, *831 the controls could not be approached without recording a picture of that approach.
Police officers, in Brooks v. Commonwealth, 15 Va.App. 407, 424 S.E.2d 566 (1992), monitored a body-mike on an informant making a drug buy. A videotape of the transaction was also made, but the officers did not see the actual transaction. The court explained that the videotape was properly admitted, under the "silent witness theory," because the videotape included an "on-screen display of the passage of time in seconds," and because the tape had not been altered. Id., 424 S.E.2d at 569.
The court in Kindred v. State, 524 N.E.2d 279 (Ind.1988), in a prosecution for perjury and forgery, held that admission of a videotape of the bank's transactions was proper where the tapes displayed the time at which the recordings were made, and where the assistant vice president of the bank testified that he dealt with the tapes on a regular basis. The assistant vice president also testified as to the loading and the operation of the cameras, and as to the chain of custody of the film. The Kindred court explained that "[i]n cases involving photographs taken by automatic cameras, such as Regiscopes or those found in banks, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera." Kindred, 524 N.E.2d at 298.
Officer Duncan, in the instant case, testified as to the installation and operation of the video camera and recorder, and as to the chain of custody of the videotape. Duncan also testified that the videotape had not been tampered with or edited. Officer Duncan finally testified as to the time and date on which the tape was made. The testimony in the instant case concerning the installation and operation of the video camera, the identification of Wagner on the videotape, a clear indication of the time and date on which the tape was made, together with the absence of any evidence concerning tampering or editing, provide the indicia of reliability required to authenticate a videotape for purposes of the "silent witness" theory.
We thus hold that relevant photographic evidence may be admitted into evidence on the "silent witness" theory when the trial judge determines it to be reliable, after having considered the following:
(1) evidence establishing the time and date of the photographic evidence;
(2) any evidence of editing or tampering;
(3) the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product;
(4) the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product, including the security of the product itself; and
(5) testimony identifying the relevant participants depicted in the photographic evidence.
The record in this case establishes that evidence was presented to the trial judge on all of the enumerated factors. Moreover, the record supports the judge's decision to admit the videotape into evidence. We find no abuse of discretion on this point.

II.

Sufficiency of the Evidence
Wagner contends that the evidence adduced by the State was consistent with his reasonable hypothesis of innocence, namely, that he did not provide the informant with the cocaine collected by Officer Duncan. Wagner does not deny that he was the person depicted in the videotape who was handing something to the informant in exchange for money, and thus his identity is not in issue. Rather, he claims that he could have been standing at the window of the informant's automobile for any reason. Wagner argues that since there was no witness who testified that he or she personally observed him exchange cocaine for money, his motion for judgment of acquittal should have been granted. After viewing the videotape and examining the record, we find that the State presented sufficient evidence to survive a motion for judgment of acquittal. Specifically, the videotape shows Wagner handing *832 something to the informant in exchange for money. The informant presented Officer Duncan with a rock of cocaine after each transaction, despite an initial search confirming the absence of cocaine on her person or in the vehicle.[3] The videotape, which depicts each incident from the time the informant left Officer Duncan's view to the time that he was able to view her again, does not show any other person near the informant's window. The videotape further reflects that the informant stopped her vehicle for a period of less than forty five seconds during each of the three times that Wagner approached her and exchanged something with her through the vehicle window. This evidence is inconsistent with Wagner's hypothesis that he was not the source of the cocaine, and the trial judge properly denied Wagner's motion for judgment of acquittal.

III.

Cross-examination of Officer Duncan
Wagner next argues that he was improperly restricted from cross-examining Officer Duncan about persons who had approached the informant in the past during controlled drug buys. Wagner suggested that he thought Officer Duncan would testify that when using this particular informant in the past, persons had approached the informant for reasons other than selling drugs. We agree with the trial judge that under the circumstances of this case this line of questioning was irrelevant.

IV.

Consolidation of Cases
Wagner next contends that the trial court should not have granted the State's motion to consolidate the three cases for trial. In reviewing a trial court's decision to consolidate separate offenses, we apply the abuse of discretion standard. Crossley v. State, 596 So.2d 447 (Fla.1992).
Florida Rule of Criminal Procedure 3.151(a), provides:
For purposes of these rules, 2 or more offenses are related offenses if they are triable in the same court and are based on the same act or transaction or on 2 or more connected acts or transactions.
As explained by this court in Pittman v. State, 693 So.2d 1133 (Fla. 1st DCA 1997), the Florida Supreme Court has found that the term "connected acts or transactions," as used in rule 3.151, refers to acts or transactions connected "in an episodic sense," and not to "`similar but separate episodes, separated in time which are "connected" only by similar circumstances and the accused's alleged guilt in both or all instances.'" Pittman, 693 So.2d at 1135 (quoting Paul v. State, 365 So.2d 1063, 1065 (Fla. 1st DCA 1979)(J. Smith, dissenting)).
In Bundy v. State, 455 So.2d 330 (Fla. 1984), the defendant murdered two women and injured two others, then, approximately an hour later, attacked a fifth woman in a nearby duplex apartment. The Florida Supreme Court held that these crimes were properly joined since they were "connected by the close proximity in time and location, by their nature, and by the manner in which they were perpetuated." Bundy 455 So.2d at 345.
The Supreme Court, in a later opinion, further characterized the offenses in Bundy as part of an "uninterrupted crime spree in which no significant period of respite separated the multiple crimes. As such, the crimes were connected and constituted a single uninterrupted episode." Ellis v. State, 622 So.2d 991, 999 (Fla.1993). Similarly, in the instant case, since the three drug sales occurred within the space of about one hour, there was little time for respite between commission of the offenses. Further, the drug sales occurred in the same city block, indicating that Wagner likely remained in this location until he had completed his drug sales for the day or until his supply of cocaine was exhausted. The evidence presented in the instant case indicates that Wagner *833 was involved in a "flurry" of drug sales, that is, that the drug sales constituted one criminal episode.
We held in Pittman, that drug sales occurring two days apart lacked a causal link and were not part of the same criminal episode. In contrast, the three drug sales in the instant case all occurred within a time period of approximately one hour. Each sale involved the same informant, the same geographical area, the same kind of drug, and the same modus operandi. Wagner's criminal conduct thus constituted a crime spree and may be considered a single episode of criminal behavior for purposes of joinder or consolidation. We find no error in consolidation.

V.

Cruel and Unusual Punishment
Wagner, in his final claim, does not argue that his sentences are illegal or that he does not qualify as an habitual violent felony offender. Rather, he claims that the seventy-five year sentences are disproportionate to his crimes and that imposition of these sentences constitutes cruel and unusual punishment under article I, section 17, of the Florida Constitution. Wagner was convicted of two first-degree felonies and of one second-degree felony. The Florida legislature has concluded that a sentence of life in prison is an appropriate punishment for a habitual violent felony offender who commits a first-degree felony. § 775.084(4)(b)1, Fla. Stat. (1995). The trial court thus correctly imposed the concurrent sentences of seventy-five years in prison for Wagner's convictions, and the judgments below are affirmed. See Hale v. State, 630 So.2d 521, 526 (Fla.1993)(explaining that "[t]he length of the sentence actually imposed is generally said to be a matter of legislative prerogative").
In summary, we AFFIRM in all respects, the judgments and sentences imposed by the trial court.
WEBSTER, J., and SCHEMER, JACK M., Associate Judge, concur.
NOTES
[1] The only significant difference in Officer Duncan's observations occurred after the second purchase, when he observed Wagner in the purchase area.
[2] The informant apparently had absconded and at the time of trial a warrant was outstanding for her arrest on charges unrelated to the instant case.
[3] Wagner argues that the informant could have had cocaine secreted on her person prior to being sent to the purchase area, and that this was the source of the cocaine presented by the informant to Officer Duncan upon the informant's return from the alleged drug buys. This hypothesis is rebutted by the evidence that the informant was stripped-searched by a female employee of the sheriff's department before and after the drug buys, and by the fact that the vehicle was searched before the drug buys began.