DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALANA KOERBER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-3025

[February 21, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 16-10937CF10A.

Jason T. Forman of the Law Offices of Jason T. Forman, P.A., Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Alana Koerber ("Defendant") challenges her convictions and sentences for: 1) violating the Florida Money Laundering Act; 2) criminal use of personal identification information; 3) grand theft; and 4) defrauding a financial institution. Defendant claims the trial court committed multiple reversible errors during trial.

Defendant argues her convictions for both grand theft and defrauding a financial institution violate double jeopardy principles. *See Pizzo v. State*, 945 So. 2d 1203, 1207 (Fla. 2006) (holding that grand theft is a lesser included offense of organized fraud for double jeopardy purposes). We agree and reverse the conviction and sentence for grand theft and remand for resentencing on the remaining charges for which Defendant was convicted.

We affirm on the remaining issues raised on appeal and write only to address whether the trial court committed reversible error by admitting

surveillance photographs from the financial institution's security cameras showing Defendant depositing an altered check. The surveillance photographs were crucial to Defendant's convictions, and Defendant argues the State did not lay a proper foundation before introducing them.

Photographs and videos from unmanned cameras, such as the surveillance photographs at issue here, are tested for admissibility under the "silent witness" theory, which provides that "photographic evidence may be admitted upon proof of the reliability of the process which produced the photograph or videotape." *Wagner v. State*, 707 So. 2d 827, 830 (Fla. 1st DCA 1998). In *Wagner*, the First District set forth five factors for a trial court to consider in determining whether evidence is admissible under the "silent witness" theory:

> (1) evidence establishing the time and date of the photographic evidence;
>
> (2) any evidence of editing or tampering;
>
> (3) the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product;
>
> (4) the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product, including the security of the product itself; and
>
> (5) testimony identifying the relevant participants depicted in the photographic evidence.

*Id.* at 831.[1]

In order to authenticate the photographs, the State presented testimony of the branch manager at the financial institution where the check was deposited. The manager testified that he "assist[s] in the process" of maintaining the security cameras from which the photographs were generated, and described the process that the staff performs for testing the accuracy of the time stamps. While the manager did not personally pull the surveillance footage, he testified that the footage is

---

[1] This Court cited *Wagner* with approval in *Cirillo v. Davis*, 732 So. 2d 387, 388 (Fla. 4th DCA 1999), and *Dolan v. State*, 743 So. 2d 544, 546 (Fla. 4th DCA 1999).

made in the normal course of business and the employee who normally pulls the footage did so in this case. Finally, the manager testified the footage accurately represented the financial institution's branch location on the date the time stamps indicated. As for the time stamps' accuracy, the staff regularly tests the cameras to make sure the time stamps are accurate.

Applying the *Wagner* factors, the State established: evidence of the photographs' time and place via the time stamps; no evidence of tampering; the cameras' accuracy; and normal procedures were followed in pulling the footage. *See Wagner*, 707 So. 2d at 831. Accordingly, we hold the court properly admitted the surveillance photographs showing Defendant depositing the altered check.

*Affirmed in part, reversed in part, and remanded for a new sentencing hearing.*

FORST, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part and dissenting in part.

Defendant was charged and convicted of an elaborate scheme, in which a substantial check was altered and deposited at a bank and then most of that money was transferred into Defendant's various accounts. A few surveillance photos from the bank's video system admitted into evidence were crucial to the State's case because the photographs purported to show Defendant at the teller window when the altered check was deposited. Defendant objected to the still photos' admission, arguing that the State failed to sufficiently authenticate the photos. I agree and would reverse for lack of proper authentication.

"Authentication or identification of evidence is required as a condition precedent to its admissibility." § 90.901, Fla. Stat. (2021). For photographs and video evidence, two methods are used to establish authenticity. The first method is through testimony of a person with knowledge that the photograph fairly and accurately depicts what is reflected in it. The second method is the "silent witness" theory, under which "photographic evidence may be admitted upon proof of the reliability of the process which produced the photograph or videotape." *Wagner*, 707 So. 2d 827, 830 (Fla. 1st DCA 1998).

In *Wagner*, the court reviewed case law across the country to determine the factors that a trial court should evaluate in determining whether a videotape or photograph is admissible, and held that "relevant photographic evidence may be admitted into evidence on the 'silent witness' theory when the trial judge determines it to be reliable, after having considered the following:"

> (1) evidence establishing the time and date of the photographic evidence;
>
> (2) any evidence of editing or tampering;
>
> (3) the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product;
>
> (4) the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product, including the security of the product itself; and
>
> (5) testimony identifying the relevant participants depicted in the photographic evidence.

*Id.* at 831.

We have relied on *Wagner* in evaluating admissibility of video evidence. *See*, *e.g.*, *Richardson v. State*, 228 So. 3d 131 (Fla. 4th DCA 2017). In *Richardson*, the general manager of a donut shop was called to testify as to a video from her store showing the suspect at the shop. *Id.* at 132. We approved the video's admission based upon *Wagner*, noting the facts supporting authentication:

> Here, there is a date and time stamp that can be seen on the video. There was also no evidence of tampering, and to the contrary, the general manager testified that the video had not been altered, edited, or superimposed upon. She also stated that there was only one other person with access to the video, and although she did not "see with her own eyes" that the loss prevention employee did not give anyone else access to the video, to the best of her knowledge, it was only that employee that accessed the video. Importantly, the general manager

also testified that the recording *could not* be altered by the recording device.

There was not much testimony regarding the condition and capability of the equipment in relation to accuracy and reliability, but the general manager did testify that she was never notified of any malfunction of the equipment. Finally, there was testimony that the video equipment was kept in a locked office, which only one manager, besides the witness, had access to enter. This establishes a level of security protecting the recording, as opposed to equipment in the open for anyone to have access.

*Id.* at 134.

In this case, the State maintained that all it needed to show was that the photos fairly and accurately depicted the scene. The State called the bank's manager as a witness, but he did not testify that he was present at the time of the transaction. Instead, the manager testified that the photos accurately depicted the bank on the date in question, and that the writing on the same page as the photos was made in the normal course of operations by persons with knowledge. That writing supplied data about the check deposited and the digital video snapshot dates and time. The State then moved the photos into evidence.

At that point, the court allowed the defense to ask further questions regarding authenticity. The manager testified that he was not responsible for maintaining the video cameras but assisted in the process. He explained, "[w]hen they're setting up cameras we check time stamp transactions, we do test interactions to make sure that cameras match with the time transactions are completed." The manager also acknowledged that he was not responsible for the video equipment. The bank has an employee who can view and pull data but does not control the equipment. Defense counsel then asked, "[s]ince this other employee pulled the data and pulled it off the equipment you can't swear as to when how that was done?" At that point the State objected, and the question was never answered. In a sidebar, the parties argued as to what was required to admit the photographs. Defense counsel provided the court with *Lerner v. Halegua*, 154 So. 3d 445 (Fla. 3d DCA 2014), which relied on the *Wagner* factors, but the court found *Lerner* factually distinguishable. The court admitted the photos without considering the *Wagner* criteria.

No evidence was offered on most of the *Wagner* factors. No date and time stamp appears on the photos, only writing above the photos which states the date, time, and teller number, as well as check information. The manager did not testify as to the security of the video from which the photos were pulled, or whether the video had been or could have been edited or altered. The manager also did not provide any evidence as to the equipment or its condition. Most importantly, the State presented minimal evidence about the cameras' accuracy, with the manager only testifying about procedures to test the cameras' time stamps when the cameras are first set up. The State did not present any testimony about the regularity of the testing. Not only did the State present minimal evidence of the cameras' accuracy, but the photograph itself disclaims it. At the top of the page, the photograph states:

> *This photograph has been processed and printed by Wells Fargo Bank using its best efforts to properly identify the photograph with the transaction in question. However, Wells Fargo makes no representation that the photograph is, beyond any doubt, a depiction of the person making the transaction in question. Wells Fargo assumes no responsibility for, or liability to, any person for the use or accuracy of this photograph.*

In this case, evidence of the *Wagner* factors is mostly non-existent and woefully deficient, even when compared to the evidence in *Richardson.* The trial court simply admitted the photos because the manager testified, without evaluating the *Wagner* factors. Where the trial court simply fails to apply the correct law on authentication, this constitutes a legal error to be reviewed de novo.

> As a general rule, "[a] trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." *Blanco v. State*, 452 So. 2d 520, 523 (Fla.1984). "However, a court's discretion is limited by the evidence code and applicable case law. A court's erroneous interpretation of these authorities is subject to *de novo* review." *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006).

*Pantoja v. State*, 59 So. 3d 1092, 1095 (Fla. 2011).

What was so important in this case was whether the person depicted in the photos deposited the suspect check, which required matching the time on the check's deposit to the time on the video. The trial court's error

6

in admitting the photos which were lacking in authentication is not harmless error.

Because the trial court did not apply the correct law, and the evidence did not support the admission of these photographs on the "silent witness" theory, I would hold that the photographs' admission was error and reverse and remand for a new trial. I agree in all other respects with the majority opinion.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***