596 So.2d 687 (1992)
Rudy A. VAN DEN BORRE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 89-2203, 89-2875.
District Court of Appeal of Florida, Fourth District.
January 29, 1992.
*688 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
*689 PER CURIAM.
Appellant Rudy A. Van Den Borre seeks to set aside his two murder convictions and sentences on the grounds that he had diplomatic immunity and that evidence of his confessions should not have been admitted at his trials. We affirm.
Appellant, a Belgian citizen and a member of the Belgian armed forces, was employed as a clerk and driver by the Belgian Embassy in Washington, D.C. After a violent quarrel with his male lover, appellant stole an Embassy handgun and fled to Florida. Upon arrival in Fort Lauderdale, appellant went to a bar, befriended a male patron, they went bar-hopping and ended up lying on the beach. Using the need to urinate as an excuse, appellant stood up, reached into a duffel bag for the stolen handgun and fatally shot his new friend in the head. Within a matter of hours, appellant went to another bar and met a second male. Later on another beach, appellant fatally shot this second male in the head. Thereafter, appellant made two telephone calls to the police giving tips about the murders and suggesting that more murders might follow. Some three days after the first murder during another unsolicited telephone call to the police, appellant identified himself as the killer. The following day, he approached a policeman, identified himself as the double killer, and "pushed" a duffel bag that contained the stolen handgun upon the surprised and unsuspecting officer.
After the police read appellant his Miranda[1] warnings, he made more confessions. The police discovered a United States Department of State [State Department] "OFFICIAL IDENTIFICATION CARD" in appellant's wallet. The card indicated that as an administrative clerk with the Belgian Embassy in Washington, D.C., appellant had diplomatic immunity from criminal prosecution. Apparently soon after appellant's arrest, one of the investigating police officers contacted the State Attorney's Office in Broward County, which in turn contacted the State Department, which in turn contacted the Belgian Embassy. The State Department and the Belgian Embassy then "FAXED" each other notes about a waiver of appellant's diplomatic immunity.[2] The record contains photocopies of those notes which consist of:
1. A note dated January 13, 1989 addressed to the Department of State on "AMBASSADE VAN BELGIE" stationery with a circular seal which had the words "AMBASSADE DE BELGIQUE, AMBASSADE VAN BELGIE, la WASHINGTON, a WASHINGTON" surrounding an insignia. The note referred to a January 12, 1989 note of the State Department requesting a waiver of immunity for appellant as a member of the administrative and technical staff of the Embassy. The sender of this note also wrote that the Belgian Government agreed to the Department's request for the limited purpose of allowing a magistrate's hearing.
2. A State Department note dated January 13, 1989 over the initials of "RG."[3] This note referred to the State Department's January 12, 1989 note to the Belgian Embassy and responded to the Belgian Government's concern over imposition of the death penalty in appellant's cases. The State Department assured the Belgian Government that the State of Florida would not seek the death penalty and would furnish written assurances and a court order to that effect.
3. An undated, but initialed note without a seal on "AMBASSADE DE BELGIQUE" stationery which referred to the State Department's notes of January 12 and 19, 1989 requesting the written assurances *690 that the death penalty would not be sought or obtained in appellant's cases. The sender of this note also stated that upon receipt of the written assurances the Belgian Government intended to waive appellant's diplomatic immunity.
4. A January 27, 1989 court order that "approved, accepted and ratified" the state's proclamation [agreed to by both investigating police departments] that "the death penalty [would] not be requested nor imposed in return for a waiver of diplomatic immunity from the Government of Belgium."
5. A sealed note dated January 31, 1989 on "AMBASSADE DE BELGIE" stationery referring to the Belgian Embassy's note dated January 23 and a January 30, 1989 response from the State Department. The sender of this note acknowledged the Belgian Embassy's receipt of the written assurances and court order attached to "the State Department's note."[4] The sender also wrote that based upon such assurances the Belgian Government waived diplomatic immunity for appellant as to "all judicial proceedings arising from the shooting deaths... ."
Appellant moved to dismiss the indictments because the state had not produced a written waiver of diplomatic immunity from the Belgian Government. At the hearing, defense counsel asked that the prosecutor provide "some type of written express waiver, under seal from the Belgium Government waiving diplomatic immunity of [his] client." In response, the state offered photocopies of the notes as evidence of the waiver. Over defense objection, the trial court admitted those notes in evidence. Appellant also moved to suppress the confessions he gave to the police before the Belgian Government had waived his diplomatic immunity. A representative from the Belgian Embassy sat through the hearing and both trials and, although given the opportunity to do so, never objected to any of the proceedings.
We acknowledge that the trial judge denied the motion to dismiss on the mistaken belief that the Belgian Government had to assert appellant's diplomatic immunity.[5] However, it is well settled that a trial judge can be right for the wrong reason. Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1950).

WAIVER OF DIPLOMATIC IMMUNITY
A "FAX" and a photocopy are duplicates of the original "writings" and "recordings." § 90.951(4)(a), Fla. Stat. (1989). Although the Florida Evidence Code allows duplicates to be admitted in evidence, a genuine question about the authenticity of the original will prevent the admission of the duplicate. § 90.953(2), Fla. Stat. (1989). The trial court makes a preliminary determination as to whether a genuine issue of authenticity has been raised. 5 J. Weinstein & M. Berger, Weinstein's Evidence § 1003[01] (1983). The trial court should require persuasive reasons for rejecting a duplicate and a specific objection indicating why the original is needed. Id. Appellant objected to the trial court's consideration of the photocopy of the waiver note and argued that it was a "Xerox copy," not the sealed original, and he did not know who prepared it or whether that person had the authority to do so. All his reasons fail because the photocopy of the waiver note was a duplicate, an equivalent of the sealed original; the photocopy did not need a final certification of the sender's authority; and the original would not have revealed who prepared the note. Appellant has never argued that Belgian Embassy personnel did not write the waiver note. At sentencing, defense counsel remarked, "Belgium and the United States of America went through a lot of trouble to get the Belgian Embassy to acquiesce to waiving diplomatic immunity...." Also, appellant never indicated why the original was required.
A trial court has a great deal of discretion in admitting or refusing to admit *691 evidence and an appellate court cannot reverse the trial court's exercise of that discretion unless it is abused. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). We hold that the trial judge properly considered the photocopies of the notes and we defer to the trial judge's discretionary ruling to admit the duplicates in evidence. We note that "secondary evidence is always to be preferred over no evidence at all." Thompson v. State, 62 Md. App. 190, 488 A.2d 995, 1006 (Ct. Spec.App. 1984), cert. denied, 303 Md. 471, 494 A.2d 939 (1985).
Further, section 90.902 of the Florida Evidence Code recognizes that authentication of a foreign document can be complex. See C. Ehrhardt, Florida Evidence § 902.4 (2d ed. 1984). Therefore, it includes a provision that eliminates the need for extrinsic evidence of authenticity of an "executed or attested" official foreign document accompanied by a final certification. Black's Law Dictionary 509 (5th ed. 1979), defines the term "executed" as "[c]ompleted; carried into full effect; already done or performed." "Attested" likewise appears in Black's, defined as "to bear witness to a fact" or "to affirm to be true or genuine." Id. at 117. None of these definitions nor section 90.902 appears to require a signature. Indeed, a "signature though usual is not necessary for validity unless required by statute." 3 W. Holdsworth, A History of English Law, 231 (1966). It is true that section 90.902(3) calls for the document to be executed by a person. However, we construe the word "person" to be interchangeable with the Belgian Government in the context of this case. Turning to the word "seal," we note that 38 Words and Phrases, "Seal" 559 (1967) proposes that in general "the purpose of a seal is to attest in a formal manner the execution of an instrument." This same quotation is to be found in the case of King v. Guynes, 118 La. 344, 42 So. 959 (1907), which also suggests that absence of formality does not vitiate a document if its authenticity is unchallenged. As noted, appellant did not deny the authenticity of the waiver note, he merely challenged its form. Therefore, we hold that the Belgian Government official executed or attested the waiver note when he or she affixed the seal to that document. Furthermore, a court may order that a foreign document be treated as presumptively authentic without a final certification when a party receives a reasonable opportunity to investigate the authenticity and accuracy of the document. § 90.902(3)(b)2, Fla. Stat. (1989). The hearing took place nearly five months after the trial court "approved" the state's waiver of the death penalty and the trial took place nearly two months later. See In re Perez, 470 So.2d 48, 51 n. 1 (Fla. 3d DCA), review denied, 480 So.2d 1295 (Fla. 1985). We hold that appellant had a reasonable opportunity to investigate the authenticity and accuracy of the waiver note which eliminated the need for a final certification.
Lastly, the trial court made a preliminary finding that the notes were authentic. See § 90.105(2), Fla. Stat. (1989). The trial judge never doubted the authenticity of the notes, he remarked, "I think it's obvious from gleaming [sic] through the evidence today that certainly [the Belgian Government was] on notice and they were aware of these proceedings... ." When the trial court found a prima facie showing of authenticity, the notes became evidence at the hearing. Id. Appellant could have presented evidence to controvert the authenticity of the notes. Id. However, he did not. We hold that the requirements of section 90.901 of the Florida Evidence Code were satisfied by evidence sufficient to support the trial court's finding that the waiver note was what the state claimed  an official document of the Belgian Government.[6] We defer to the trial judge's discretionary evidentiary ruling as to authenticity. See also C. McCormick, McCormick on Evidence § 227 (3d ed. 1984).
*692 We stress that the state attorney agreed not to seek the death penalty and the trial judge agreed not to impose it if the Belgian Government waived appellant's diplomatic immunity. Appellant never objected to these sentencing concessions and he insisted at sentencing that he receive the benefits of those agreements, which he did when the trial judge imposed two life sentences. Also, appellant acknowledged in his motion for a new trial that his diplomatic immunity had been waived by the Belgian Government.
For all the reasons stated above, we hold that no reversible error occurred when the trial judge admitted the notes into evidence.

ADMISSIBILITY OF CONFESSIONS
Even though the Belgian Government had not waived appellant's diplomatic immunity at the time of his confessions to the police, based on the facts of this case, we hold that those confessions would not have been subject to suppression. See Savage v. State, 588 So.2d 975 (Fla. 1991). As the supreme court stated:
The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). "Whether the exclusionary sanction is appropriately imposed in a particular case ... is `an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983)). The prime purpose of the exclusionary rule is to deter the police from engaging in "willful, or at the very least negligent, conduct which has deprived the defendant of some right... . Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974); accord Leon; United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).
Id. at 978.
For the reasons expressed in Savage, we hold that the exclusionary rule does not apply in this case:
[Appellant], himself, thought he was in violation of [the law] and was the first person to raise the subject. The police acted in good faith on the information given by [appellant], with objectively reasonable belief that arresting [appellant] for [the [murders] would be proper. It cannot be said that the police engaged in bad acts, or negligently deprived [appellant] of any constitutional rights. Therefore, we hold that, even if [appellant] were illegally arrested for [the murders], the trial court did not err [when he refused] to suppress the [confessions] made after the arrest[s].
Id.
AFFIRMED.
GARRETT, J., concurs.
LETTS, J., specially concurs with opinion.
GUNTHER, J., dissents with opinion.
LETTS, Judge, specially concurring.
I am of the opinion that the defendant should not prevail on the grounds of imperfect self-authentication of the foreign documents.
First, the defendant's counsel admitted the waiver of immunity in the following post-trial motion:
The State of Florida and Belgium and the United States of America went through a lot of trouble to get the Belgian Embassy to acquiesce to waiving diplomatic immunity that this defendant had by virtue of the nature of his job. (Emphasis supplied).
While the dissent stresses that immunity is the defendant's right to assert, it is *693 equally clear that immunity is Belgium's right to waive and it did, in fact, do so.
Second, the state filed, prior to trial, a "Prosecutor's Affidavit In Aid of Waiver of Diplomatic Immunity," reproduced as follows:
STATE OF FLORIDA, Plaintiff,
vs.
RUDY A. VAN DEN BORRE, Defendant.

PROSECUTOR'S AFFIDAVIT IN AID OF WAIVER OF DIPLOMATIC IMMUNITY
Judge: SEAY
I, CHARLES B. MORTON, JR., hereby state that I am an Assistant State Attorney in Broward County, State of Florida, and that I am authorized to act for the State Attorney in the prosecution of Rudy A. Van Den Borre. Rudy A. Van Den Borre has been arrested for two (2) counts of first degree murder, Case No. 89-1055CFA, arising from the shooting deaths of Michael J. Egan on or about January 8, 1989 and Gerald Simons on or about January 9, 1989. I am familiar with the facts and circumstances of those shootings.
At the time of the shootings, it is my understanding that Mr. Van Den Borre was a member of the administrative and technical staff of the Belgium Embassy in Washington, D.C. and is now and was at all times a citizen of Belgium. The United States Department of State has advised our office that Mr. Van Den Borre is afforded automatic full diplomatic immunity from criminal jurisdiction in accordance with Article 32 of the Vienna Convention on Diplomatic Relations. If the Belgium Government invokes this immunity, Mr. Van Den Borre will be returned to Belgium. If Mr. Van Den Borre is returned to Belgium, the Belgium Government is under no legal obligation to prosecute him for the crimes stated above.
At the request of the Broward County State Attorney's Office of the 17th Judicial Circuit, Broward County Florida, the United States Department of State requested the Belgium Government through diplomatic note to waive the diplomatic immunity of Mr. Van Den Borre and to allow the State Attorney to prosecute Mr. Van Den Borre to the fullest extent of the law. However, the Belgium government adamantly opposes the death penalty and has responded to this request through diplomatic note that it be provided with written assurances that the death penalty will not be sought nor imposed if it waives diplomatic immunity. Pursuant to this request contained in the diplomatic note of the Embassy of Belgium regarding the allegations involving Rudy A. Van Den Borre, I hereby proclaim that this State Attorney will not seek or obtain the death penalty against Mr. Van Den Borre for the shooting deaths of Michael J. Egan and Gerald Simons. Attached herewith is a judicial ratification of these assurances through the trial Court order, which makes them legally binding on the State as well as the Court.
These written assurances are conditioned on the Government of Belgium waiving the diplomatic immunity from criminal jurisdiction afforded to Mr. Van Den Borre in accordance with Article 32 of the Vienna Convention on Diplomatic Relations and on assurance that the Government of Belgium will not revoke or withdraw the waiver.
I certify that I have discussed this matter with the State Attorney for the 17th Judicial Circuit, in and for Broward County, Florida and that the State Attorney concurs in offering this assurance in support of obtaining a waiver of diplomatic immunity from the Belgium Government. Finally, I certify that I have discussed this matter with authorized representatives of the arresting agencies as well as the relatives of Michael J. Egan and that they concur in offering this assurance. (written consents of the arresting agencies are attached to this affidavit.)
 /s/ Charles B. Morton, Jr.
 CHARLES B. MORTON, JR.
 Assistant State Attorney
 Seventeenth Judicial Circuit
 Homicide Trial Division
 Florida Bar No. 201391
*694 On the same day, the trial judge entered an order agreeing that he would not impose the death penalty as follows:
ORDER
THIS CAUSE coming on to be heard on the State Attorney's request to ratify his intention not to seek or obtain the death penalty and the Court having been fully apprised in all the circumstances it is, therefore
ORDERED AND ADJUDGED that the attached State Attorney's proclamation that the death penalty will not be requested nor imposed in return for a waiver of diplomatic immunity from the Government of Belgium is hereby approved, accepted and ratified.

DONE AND ORDERED in Fort Lauderdale, Broward County, Florida this 27 day of January, 1989.
 /s/ Russell E. Seay, Jr.
 RUSSELL E. SEAY, JR.
 CIRCUIT JUDGE OF THE
 SEVENTEENTH JUDICIAL
 CIRCUIT
The defense, not surprisingly, uttered no protest to the above pronouncements because it knew the death penalty would not be sought or imposed. It is obvious that both pronouncements were predicated on a waiver of immunity by Belgium and so they both recited. In my view, it would be an unacceptable "gotcha" tactic to uphold the defense's objection to the formality of the foreign documents when it took full advantage of the benefits emanating therefrom.
There can be no question that these documents would have been admissible in federal court under Rule 803(24) of the Federal Rules of Evidence, the "catchall" exception to the hearsay rule. As Professor Ehrhardt notes, Florida has not seen fit to adopt such a rule. See Ehrhardt, Florida Evidence § 803.24. (2d ed. 1984). Nonetheless, for all the reasons stated above, and because the entire question evolves from federal legislation, I find no reversible error in accepting these documents which had guarantees of trustworthiness with a high degree of necessity. See Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir.1961).
GUNTHER, Judge, dissenting.
I respectfully dissent. I would reverse the convictions because the trial court erred in denying Van Den Borre's motions to dismiss the indictments.
Van Den Borre moved to dismiss the charges against him on the grounds that the Belgian Government had not waived his diplomatic immunity. The two pertinent bodies of law governing diplomatic immunities and privileges are the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502, and the Diplomatic Relations Act, 22 U.S.C.A. § 254a-254e (West 1990). According to section 254d of the Diplomatic Relations Act, a trial court must dismiss an action against an individual who has immunity under the Vienna Convention upon motion by that individual. Under the Vienna Convention, an individual has immunity from criminal prosecution if he or she is a member of an embassy's administrative staff, unless the immunity is expressly waived by the sending state.[7]
Clearly, Van Den Borre is a Belgian citizen who, prior to arrest, had been accorded full diplomatic immunity from criminal prosecution by virtue of his position as a member of the administrative staff of the *695 Belgian Embassy in Washington, D.C. The state, however, maintains that Van Den Borre's immunity from criminal prosecution was expressly waived by Belgium, the sending state.
The state asserts that the express waiver by Belgium of Van Den Borre's immunity from criminal prosecution is evidenced in the record by several photocopied diplomatic notes between the Belgian Embassy and the United States Department of State. However, since the diplomatic notes were neither properly authenticated as required by section 90.901, Florida Statutes (1989), nor were self-authenticating as defined in section 90.902, Florida Statutes (1989), the notes were inadmissible and do not constitute an effective express waiver by Belgium of Van Den Borre's immunity from criminal prosecution.
Under section 90.901, evidence is authenticated when prima facie evidence is introduced to prove that the proffered evidence is that which the proponent of the evidence claims it to be. In the proceeding below, the state introduced no evidence which established the authenticity of the diplomatic notes. Thus, since section 90.901 requires that a document be authenticated as a condition precedent to its admissibility into evidence, the diplomatic notes were erroneously admitted in the instant case and cannot provide a basis for an express waiver by Belgium of Van Den Borre's immunity from criminal prosecution.
Furthermore, the diplomatic notes were not admissible pursuant to section 90.902. The pertinent portions of section 90.902 are:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required for:
... .
(3) An official foreign document ... that is:
(a) Executed or attested to by a person in his official capacity authorized by the laws of a foreign country to make the execution or attestation; and
(b) Accompanied by a final certification ... of the genuineness of the signature and official position of:
1. The executing person; or
2. Any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in the chain of certificates of signature and official position relating to the execution or attestation. .. . When the parties receive reasonable opportunity to investigate the authenticity and accuracy of official foreign documents, the court may order that they be treated as presumptively authentic without final certification or permit them in evidence by an attested summary with or without final certification.
§ 90.902(3), Fla. Stat. (1989) (emphasis added).
In the instant case, the diplomatic notes that the state succeeded in having admitted as evidence of Belgium's express waiver of Van Den Borre's immunity from criminal prosecution did not satisfy the two statutory requirements of section 90.902 for self-authentication. The first requirement for self-authentication is that the notes shall be executed or attested to by a person, and the second is that the notes shall be accompanied by a final certification. The first requirement, execution or attestation by a person, must be met, but the second requirement, the final certification, under certain circumstances as set forth in the statute can be circumvented. Contrary to the majority's position, section 90.902(3)(b) expressly recognizes that a self-authenticated foreign document must have a "signature." In the present case, no signature appears on the face of the diplomatic note waiving Van Den Borre's immunity. Therefore, the diplomatic notes were not self-authenticating because the first statutory requirement was not met, that is, the diplomatic notes were not executed or attested to by a person. See United States v. De Jongh, 937 F.2d 1, 4-5 (1st Cir.1991); United States v. Perlmuter, 693 F.2d 1290, 1293 (9th Cir.1982).
Apparently, this ostensible waiver was not properly authenticated because there was the mistaken impression that in order for Van Den Borre to have effective immunity, the Belgian Government had to assert *696 this immunity on his behalf. Since the Belgian Government did not assert this immunity, the trial court concluded that Van Den Borre was not entitled to diplomatic immunity. However, this analysis and conclusion is incorrect because a person who has diplomatic immunity may assert this immunity on his own behalf. See Abdulaziz v. Metropolitan Dade County, 741 F.2d 1328, 1330 (11th Cir.1984); 22 U.S.C.A. § 254d (West 1990). If this were not the case, then the Vienna Convention's requirement that all waivers of diplomatic immunity be express would be rendered superfluous since the sending state could implicitly waive immunity by simply not asserting it on behalf of its diplomatic agent.
In conclusion, the trial court erred in denying Van Den Borre's motions to dismiss the indictments filed against him because the diplomatic notes were erroneously admitted as evidence of Belgium's express waiver of Van Den Borre's immunity from criminal prosecution. Consequently, the judgment of conviction should be reversed and the case remanded to the trial court.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] "Waivers of immunity, by universal custom, are requested and and granted exclusively through an exchange of diplomatic notes between foreign offices." See United States v. Deaver, No. 87-009TPJ, 1987 WL 13365 (D.D.C. June 22, 1987).
[3] A diplomatic note that contains an informal summary of a diplomatic conversation is initialed, not signed. U.S. Dep't St., Correspondence Handbook, Diplomatic Notes, § 2.b(1) (1987).
[4] Apparently, the January 30, 1989 response from the State Department to the Belgian Embassy.
[5] The state now concedes that appellant had the right to assert his diplomatic immunity.
[6] It is undisputed that the right to waive diplomatic immunity belongs exclusively to a government.
[7] Article 1(f) of the Vienna Convention provides that "the `members of the administrative and technical staff' are the members of the staff of the mission employed in the administrative and technical service of the mission." 28 U.S.T. at 3231. Furthermore, Article 37(2) states that "[m]embers of the administrative and technical staff of the mission ... shall ... enjoy the privileges and immunities specified in Articles 29 to 35, except [for] ... immunity from civil and administrative jurisdiction... ." Id. at 3244. Article 29 provides that "[t]he person of a diplomatic agent shall be inviolable. He shall not be liable to any form of arrest or detention... ." Id. at 3240. In addition, Article 31(1) states that "[a] diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State... ." Id. Finally, according to Article 32(1) and (2) this immunity may be waived by the sending State and the waiver must be express. Id. at 3241.