810 So.2d 532 (2002)
Veleka BRYANT, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-3698.
District Court of Appeal of Florida, First District.
January 28, 2002.
Rehearing Denied March 19, 2002.
*533 Harold S. Richmond and Grant Dearborn, Quincy and Michael R. Reiter, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Trisha E. Meggs, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
Veleka Bryant appeals three convictions for child abuse, having been acquitted on two other counts. The only evidence the jury saw that crimes had occurred was an edited videotape excerpt with multiple "enhancements" that the state had made for purposes of trial. When the state offered the edited, fully enhanced excerpt at trial, defense counsel objected that he had not seen it before or even known of its existence, and sought a continuance so that a defense expert could examine the excerpt, compare it to the originals, and evaluate the state's expert's testimony about the alterations. Concluding that admitting this excerpt, over objection on best evidence grounds, without granting the motion for continuance (or comparing the excerpt with the originals) was error, we reverse and remand for a new trial.

*534 I.
The state adduced evidence linking the edited, fully enhanced excerpt to time lapse videotapes removed from the toddler room at Color Me Kids, Inc. Day Care Center. One of the daycare center owners testified that, after receipt of an anonymous tip, a time lapse camera had been installed in the toddler room on June 15, 1999. After removing videotapes from this camera two days later and viewing them, she testified, the owners gave the tapes, unaltered, to Detective Bruce Gaines of the Leon County Sheriffs Office.
Detective Gaines testified that he gave the tapes to State Attorney's Office Investigator Jimmy Anderson, still unaltered. Investigator Anderson testified that he gave the tapes in turn to Carl Knowles, a videographer the state retained, in the same condition in which he received them. Finally, Mr. Knowles testified as an expert that, in creating the initial, partially enhanced (joint[1]) excerpt and later the edited, fully enhanced excerpt of the original time lapse videotapes, he did not alter the original tapes, which were received in evidence at trial. He described the process he testified he used to create the edited, fully enhanced excerpt in some detail, and testified that none of the original images had been distorted.
Defense counsel objected that he had never seen the edited, fully enhanced excerpt, had been unaware of its existence, and had been affirmatively misled to believe that the state was going to offer a different videotape consisting of portions of a partially enhanced, joint excerpt he had viewed.[2] Defense counsel also asked the trial court for a continuance in order to obtain a defense expert to evaluate the state's expert's testimony. Finally, defense counsel objected that the edited, fully enhanced excerpt was inadmissible under the decision in Wagner v. State, 707 So.2d 827 (Fla. 1st DCA 1998) and the best evidence rule. See § 90.952, Fla. Stat. (2000) ("Except as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording or photograph.").
The trial court was initially under the impression that "the tapes in question here have been disclosed,"[3] and did not conduct *535 a hearing pursuant to Richardson v. State, 246 So.2d 771, (Fla.1971). The trial court did, however, declare a recess so that defense counsel could view the edited, fully enhanced excerpt. Whether the trial judge joined counsel in watching the edited, fully enhanced excerpt before overruling the defense objections to its admission is unclear from the record. What is clear is that neither the trial court nor defense counsel had viewed the original, time lapse videotapes.[4]
The jury, who viewed the edited, fully enhanced excerpt during the trial, interrupted their deliberations to ask to see the original time lapse tapes, as well. After consulting counsel and in their presence, the trial judge responded:
Let me advise you, we have consulted with the defense and consulted with the State. We do not physically have the ability or the equipment at this time to play the Exhibits 2-A and 2-B [the original, time lapse videotapes]. And we are not sure what or how long it would take to find that equipment or if it would be possible to obtain that tonight. So at this time we do not have the capability and the special machinery to play 2-A and 2-B.
He also informed the jury that they could watch the edited, fully enhanced excerpt tape again. The trial court evidently relied on counsel's representations concerning the need for and unavailability of special equipment for viewing the original, time lapse videotapes.[5]

II.
A videotape, like a still photograph, may be admissible "if relevant to any issue required to be proven in a case," State v. Wright, 265 So.2d 361, 362 (Fla. 1972), "unless it is barred by a rule of exclusion or its admission fails a balancing test to determine whether the probative value is outweighed by its prejudicial effect." Rose v. State, 787 So.2d 786, 794 (Fla.2001). "The rule governing admissibility into evidence of photographs applies with equal force to the admission of motion pictures and video tapes. Grant v. State, *536 171 So.2d 361 (Fla.1965)." Paramore v. State, 229 So.2d 855, 859 (Fla.1969), vacated as to sentence only, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); see § 90.951(2), Fla. Stat. (2000) ("`Photographs' include still photographs, X-ray films, videotapes, and motion pictures.").

A.
The proponent of a photograph must be prepared to establish as a predicate for its admission that the photograph fairly and accurately represents what it purports to depict. Only if a "picture ... i[s] verified as a true representation of the subject about which testimony is offered, is [it] admissible in evidence." Adams v. State, 28 Fla. 511, 10 So. 106, 113 (1891). "Any witness with knowledge that [a still photograph or a videotape] is a fair and accurate representation may testify to the foundational facts...." Charles W. Ehrhardt, Florida Evidence, § 401.2, at 114 (2001 Ed.). A witness (who need not have been the photographer) who saw what a photograph portrays can testify to the photograph's fairness and accuracy. See, e.g., Hillsborough County v. Lovelace, 673 So.2d 917, 918 (Fla. 2d DCA 1996). In the present case, nobody who was in the toddler room when the time lapse videotape recordings were made testified.

B.
If no witness who is available has seen what a videotape or a photograph depicts, proof of surrounding circumstances may nevertheless "be sufficient for the court to find that the photograph is a fair and accurate representation of a material fact." Ehrhardt, supra, § 401.2, at 114. This approach reflects resort to the so-called "silent witness" theory, see generally Hannewacker v. City of Jacksonville Beach, 419 So.2d 308, 311 (Fla.1982), which entails proof of foundational facts establishing the reliability of the process that yielded the photographic images, taking into account the following factors:
(1) evidence establishing the time and date of the photographic evidence;
(2) any evidence of editing or tampering;
(3) the operating condition and capability of the equipment producing the photographic evidence as it relates to the accuracy and reliability of the photographic product;
(4) the procedure employed as it relates to the preparation, testing, operation, and security of the equipment used to produce the photographic product, including the security of the product itself; and
(5) testimony identifying the relevant participants depicted in the photographic evidence.
Wagner v. State, 707 So.2d at 831; see Dolan v. State, 743 So.2d 544, 546 (Fla. 4th DCA 1999) ("The state established that the original videotape accurately reflected the store through the shop owner. Where there is testimony as to the nature of the store's video security system, the placement of the film in the camera, how the camera worked, the circumstances of removal of the tape and chain of possession of the tape, such testimony is sufficient authentication of the tape."). Here witnesses testified to the identity of "relevant participants depicted in" the edited, fully enhanced excerpt, but not of those depicted in the original, time lapse videotapes, as such.

III.
The confusingly named "best evidence rule" allows a duplicate to be admitted in evidence to the same extent as an original, so long as the duplicate "was produced by a method which insured accuracy *537 and genuineness." Ehrhardt, supra, § 953.1, at 894.
A duplicate is admissible to the same extent as an original, unless:
. . . .
(2) A genuine question is raised about the authenticity of the original or any other document or writing.
(3) It is unfair, under the circumstance, to admit the duplicate in lieu of the original.
§ 90.953, Fla. Stat. (2000). Even though no witness directly identified the persons the original, time lapse videotapes (which were never shown to the jury) depict, the defense conceded their identity, and explicitly refrained from any objection on that ground.[6]
We see no reason to disturb the trial court's finding that the original time lapse videotapes were authentic. See Dragani v. State, 759 So.2d 745, 746 (Fla. 5th DCA 2000) (finding the evidence sufficient to authenticate a videotape and photographs made from the videotape where a bank employee testified as to the installation and operation of the bank's video camera, and the date and time the videotape was made, and where there was no evidence of tampering). Nor is there any requirement that the person who actually installed the camera testify to the installation. See id. at 746 (finding a bank officer's testimony about the installation and operation of the bank's video camera sufficient).
The state's expert also testified about the nature of the enhancements to the original, time lapse videotapes. Such testimony was a necessary component of the state's effort to prove the foundation necessary for admission of the edited, fully enhanced excerpt. In effect, the state offered the edited, fully enhanced excerpt as a duplicate of the original, time lapse videotapes. A duplicate is defined as:
A counterpart produced by the same impression as the original, from the same matrix; by means of photography, including enlargements and miniatures; by mechanical or electronic rerecording; by chemical reproduction; or by equivalent technique that accurately reproduces the original....
§ 90.951(4)(a), Fla. Stat. (2000); see Van Den Borre v. State, 596 So.2d 687, 690 (Fla. 4th DCA 1992) (holding that a "`FAX' and a photocopy are duplicates"); Garcia v. Lopez, 483 So.2d 470, 471 & n. 1 (Fla. 3d DCA 1986) (discussing whether an unsigned copy of an agreement is a duplicate); see also United States v. Beeler, 62 F.Supp.2d 136, 148 (D.Me.1999) ("[R]erecordings that are enhanced so that the images are clearer to depict [sic] are also `duplicates' so long as the tapes accurately reproduce the original images on the tape. See Fountain v. United States, 384 F.2d 624, 631 (5th Cir.1967)....").
The trial court did not, however, view and compare the original, time lapse videotapes with the edited, fully enhanced excerpt before ruling on the latter's admissibility. See generally Crews v. State, 442 So.2d 432, 433 (Fla. 5th DCA 1983) (stating that "preview[ing] the videotape outside the presence of the jury before ruling on its admission ... would have been the best procedure."). The trial court's supposed inability to compare the edited, fully enhanced excerpt to the originals from which it was taken can be traced to the state's springing it on the defense at trial, which also led to the defense's inability to have it examined by an expert.

IV.
In illuminating contrast, the trial court in Beeler, 62 F.Supp.2d at 149, viewed both *538 the original and enhanced versions of a surveillance tape before ruling that the enhanced versions were "accurate, authentic, and trustworthy representations of the original tape." That court listened to testimony from a "visual enhancement expert," and viewed all three versions of the tapes before expressing satisfaction "that they depict the same images and have not been manipulated to impermissibly alter the images." Id.; see also Dolan, 743 So.2d at 546; Nooner v. State, 322 Ark. 87, 907 S.W.2d 677, 686 (1995) (rejecting defendant's argument that the silent witness theory did not apply to enhanced photographs taken from a videotape, where the trial judge held a pre-trial hearing on the issue, and the videotape was admitted into evidence); Commonwealth v. Hindi, 429 Pa.Super. 169, 631 A.2d 1341, 1345 (1993) (approving the trial court's decision to view the videotapes in camera before letting the defendant show the jury a slow motion or freeze frame version).
A party opposing introduction of a putative duplicate videotape who fails, as here, to raise a genuine issue about the authenticity of the original must ordinarily object with specificity to any putative dissimilarity between the original and the duplicate. See Beeler, 62 F.Supp.2d at 149 (observing that without specific facts the defendant's allegations that the tape was inauthentic or untrustworthy were not persuasive); see also Cross v. U.S., 149 F.3d 1190, 1998 WL 255054, *5 (10th Cir.Kan. 1998) (unpublished opinion) (stating that the "mere possibility" of tampering is insufficient to prove bad faith); United States v. Balzano, 687 F.2d 6, 7-8 (1st Cir.1982) (holding that a tape was not inadmissible merely because it was alleged hypothetically that tampering may have occurred). Failure to allege discrepancies with specificity may justify overruling an objection even without viewing and comparing the original and the duplicate. See United States v. Devous, 764 F.2d 1349, 1353 (10th Cir.1985) (approving the trial court's decision to admit duplicate audiotapes where the defendant had not objected that the original had been tampered with until appeal); United States v. Clements, 588 F.2d 1030, 1039 (5th Cir.1979) (approving trial court's decision to admit a duplicate audiotape, absent any objection to the accuracy of the tapes).
But the defense was deprived, in the present case, of an opportunity to consult an expert (of the kind on which the state relied to prove facts essential to admissibility) in order to assess for itself whether conceded differences between the original time lapse tapes and the edited, fully enhanced excerpt were material. Of crucial importance in the present case is the fact that "tampering" had unquestionably occurred: the state retained an expert to alter the original, time lapse videotapes to produce something more likely to persuade the jury of appellant's guilt. Neither judge, jury, nor defense counsel got to see the originals and compare them with the excerpt that came in evidence in lieu of the original, time lapse videotapes.

V.
Remanding for retrial will allow informed decision, after opportunity for input from both parties' experts, as to whether the edited, fully enhanced excerpt faithfully reproduces all material aspects of the original, time lapse videotapes, so as to render the excerpt admissible under the best evidence rule against appellant as a duplicate of the originals. If the excerpt is admitted on retrial, the jury should be afforded a chance to compare the original, time lapse videotapes with any enhanced version, if any party so requests.
We also note our agreement with the views expressed by the learned trial judge *539 regarding the jury's entitlement to compare the original, time lapse videotapes with the edited, fully enhanced excerpt presented at trial:
Well, they obviously haveI think they have a right to see anything in evidence and the question is, can we make arrangements to get a video recorder that will play [the originals], because I think that they have a right to see it.
See Crews, 442 So.2d at 434 ("The jury ... requested that the videotape, which was admitted into evidence, be furnished to them, as they had every right to do. Fla. R.Crim. Pro. 3.400."). The jury should be shown any videotape received in evidence.
Reversed and remanded.
ALLEN, C.J., and BOOTH, J., CONCUR.
NOTES
[1] The partially enhanced, joint excerpt had been created in November or December of 1999 to depict actions both of appellant and of another daycare worker. Mr. Knowles testified that the initial (partial) enhancement consisted of inserting two, duplicate frames between every frame on the time lapse videotape to create the "real time" effect of standard videotapes.

Defense counsel first learned of the partially enhanced, joint excerpt when the state made it available to him a week before trial, advising him that the portions pertaining only to incidents involving the other daycare worker would be excised.
[2] Defense counsel was surprised at trial when the state offered the edited, fully enhanced excerpt. While the edited, fully enhanced excerpt did exclude material pertaining only to the other daycare worker, what remained had been further enhanced to produce a "zoom" effect. Investigator Anderson testified that Mr. Knowles created the edited, fully enhanced excerpt about a week before trial. Defense counsel's representation that he had not been informed of its existence until it was offered at trial went unchallenged.
[3] The trial court may have relied on the state's inaccurate representations that the only difference between the edited, fully enhanced excerpt and the partially enhanced joint excerpt was that portions of the latter depicting incidents involving only the other daycare worker had been removed.

Defense counsel did not in so many words assert below that a "discovery violation" had occurred, but did inform the trial court: "This [the edited, fully enhanced excerpt] has never been disclosed. I went over last Friday and looked at everything they had. This was not made available."
[4] Although defense counsel told the trial court that he had tried to see them prior to trial, and came to the state attorney's office at an agreed time in an effort to view them, he represented at oral argument that he was told that the state did not have a machine that was necessary to play time lapse videotapes and turned away. In order to minimize pretrial publicity, the parties had agreed to a protective order and informal discovery in lieu of formal discovery with regard to the original, time lapse videotapes.
[5] After the jury asked to view the original, time lapse videotapes, the court conferred with counsel, and specifically asked the state whether the court had a machine capable of playing the originals. The prosecutor replied:

These are all commercialthese are all regular VCRs. We can't play it with that. It won't play through this. It has to be played through a special player, and this only is a recorder.... [The jury] would not be able to watch it on any of the VCRs that we have here.
But the original, time lapse videotapes that were received in evidence below are part of the record on appeal and were played on a "standard" video cassette recorder for the benefit of the appellate panel.
Kim Bishop, a co-owner of the daycare center testified at trial:
Q And what was your difficulty in trying to view the tapes that were produced by this machine?
A When we triedwhen we retrieved them out of the attic, it was very quick and very fast and you couldn't make out anything. It was all jittery.
Q Did you try to play those tapes on, say, a regular VCR?
A Yes, we did.
. . . .
Q So you had to utilize a different machine to actually view the tapes recorded, is that correct?
A Yes.
[6] The defendant's motion in limine filed May 31, 2000, is addressed to the partially enhanced, joint excerpt, which the state never offered in evidence.