649 So.2d 312 (1995)
Phillip J. CLOCK and Mary Rae Buck, Appellants,
v.
Vikki CLOCK, Appellee.
Phillip J. Clock, Appellant/Cross-Appellee,
v.
Vikki Clock, Appellee/Cross-Appellant.
Nos. 93-2399, 93-2403.
District Court of Appeal of Florida, Third District.
January 25, 1995.
*313 Margaret Tobin Mills, Key West, Jason R. Smith, Miami, for appellant/cross-appellee.
Erol M. Vural, Summeland, Key, for appellee/cross-appellant.
Before HUBBART, BASKIN and GREEN, JJ.
GREEN, Judge.
This is an appeal from an order adjudicating J.C., a minor, dependent and a cross appeal from an order adjudicating J.C.'s father indigent for purposes of appeal. For the reasons set out below, we reverse the order adjudicating J.C. dependent and affirm the order adjudicating J.C.'s father indigent for purposes of appeal.
A recitation of the unusual facts and proceedings below which led to this appeal are as follows: appellants/respondents Clock and Buck were formerly married to each other and resided in Colorado at the time of the marriage. They are the natural parents of J.C., a minor, and his sister L.C. who has now attained the age of majority. As the result of a divorce between J.C.'s parents, his father was awarded custody of both J.C. and L.C. but his mother was given summer and holiday visitation rights in Colorado.
J.C.'s father relocated to Monroe County, Florida and subsequently married appellee/petitioner Clock. Thereafter, J.C. and L.C. came to Monroe County to reside with their father and stepmother. By all accounts, this was a very stable and nurturing environment for both J.C. and his sister. As fate would have it, however, J.C.'s father and stepmother ultimately divorced after nine years of marriage. During the pendency of their divorce, Clock decided to allow J.C. and L.C. to remain with their stepmother until the end of the school year when he planned to move back to Colorado with J.C.[1]
Prior to Clock's planned relocation to Colorado, J.C.'s stepmother filed a petition for dependency pursuant to section 39.404, Florida Statutes (1993) seeking to have J.C. declared dependent. The petition alleged, among other things, that Clock had abandoned J.C. in Monroe County and that J.C. was at substantial risk of imminent neglect, abuse or abandonment if he returned to Colorado with his father. Moreover, the petition alleged that J.C. did not want to relocate to Colorado and had expressed this both to his father and stepmother.
An adjudicatory hearing on the petition was conducted. Present at the hearing were all parties and their respective counsel. The court made an oral pronouncement that it did not find either of J.C.'s natural parents guilty of any abuse, neglect or abandonment. At the recommendation of the court appointed guardian ad litem, however, the trial court postponed a final decision pending a psychological evaluation of J.C. The guardian advised the court that J.C. was depressed about the prospect of returning to Colorado and being separated from his sister, stepmother, friends and familiar surroundings in Monroe County, Florida.
*314 When the final disposition hearing resumed, the court heard testimony from the psychologist who noted that J.C. had formed a significant emotional attachment to his stepmother, sister and friends in Monroe County. The psychologist testified that although J.C. was depressed at the prospect of having to leave his sister, stepmother and friends, J.C. was not at risk of developing any major psychological illness. At worst, the psychologist opined that if J.C. were forced to move back to Colorado against his wishes, there was always the possibility that J.C. might become alienated, isolated or amotivational and have a "stormy adolescence" (i.e. experimentation with drugs, alcohol or other antisocial behavior).
Having heard this testimony, the court granted the petition of dependency despite its earlier finding of no abuse, neglect or abandonment by J.C.'s natural parents and concluded that:
[T]he proposed relocation to Colorado by Clock is likely to have a profound adverse emotional or behavioral consequences for J.C. There is therefore a substantial risk of emotional or psychological harm to the child... .
Surprisingly, the court then granted temporary custody of J.C. to his eighteen year old sister L.C. The court granted J.C.'s natural parents liberal visitation rights, but admonished all parties not to attempt to influence J.C. as to where he wished to live. The court also ordered J.C.'s father to pay child support payments directly to J.C.'s sister.
During the pendency of this appeal, the trial court reviewed and modified its order of dependency.[2] After an evidentiary hearing, the court found that J.C. continued to be dependent but that he was no longer at risk of imminent emotional or psychological harm if returned to the custody of his natural father. The trial court therefore returned J.C. to the custody of his father but enjoined his father from relocating J.C. outside of Monroe County, except for summer vacations to Colorado, pending further order of the court.
On appeal, J.C.'s natural parents argue, among other things, that the record does not support the trial court's finding of dependency and that the petition for dependency should therefore have been dismissed. We agree.
A dependent child is one who has been abandoned, abused, or neglected by his parents or custodians. Sec. 39.01(10)(a), Fla. Stat. (1993); Hardy v. Department of H.R.S., 568 So.2d 1314, 1316 (Fla. 5th DCA 1990). Based upon the conclusions in support of the order of dependency, the trial court obviously deemed Clock's planned relocation to Colorado with J.C. to be an act of abuse.
The statutory definition of abuse is set out in section 39.01(2), Florida Statutes (1993):
"Abuse" means any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. (emphasis added)
The court apparently construed Clock's proposed act of relocating J.C. to Colorado against J.C.'s wishes to be a willful act which was likely to cause J.C. significant emotional harm since J.C. had already been subjected to one prior divorce and relocation. We note that this finding was not established by a preponderance of the evidence and even if it had been, we conclude that it could not support a finding of dependency under Chapter 39.
Divorce, unfortunately, is quite prevalent in our society and it is not at all unusual for children of divorced parents to be relocated from familiar surroundings and separated from significant others more than once in their lifetime as their custodial parents seek to reestablish their lives elsewhere. We are not unmindful of the fact that repeated relocations and separations may be unsettling or even traumatic to children and could potentially create emotional problems in the future if appropriate steps are not taken (e.g. counseling) to assist them in adjusting or coping with their new environment. However, we do not believe that the Florida legislature *315 intended to subject an otherwise fit custodial parent to a charge of abuse under section 39.01(2) simply because the parent seeks to relocate his child against the child's wishes. Accordingly, we hold that the mere act of relocating or separating a child from familiar surroundings by an otherwise fit and proper custodial parent against the child's wishes does not constitute abuse under section 39.01(2) and therefore does not render the child dependent under section 39.01(10)(a).
We next address the cross appeal wherein J.C.'s stepmother seeks a reversal of the trial court's order adjudicating J.C.'s father indigent for purposes of this appeal. Specifically, the stepmother argues on appeal that the trial court erred in entering this order where the father's affidavit of indigency was not supported by a written certificate executed by his attorney as required by section 57.081(1), Florida Statutes (1993).[3] Although the stepmother made specific objections to this order below, this particular ground was never raised with the trial court. Accordingly, we must affirm this order because an appellate court will not consider any ground for objection not presented to the trial court; review is limited to the specific grounds raised below. Mt. Sinai Hosp. of Greater Miami v. Steiner, 426 So.2d 1154 (Fla. 3d DCA 1983).
Reversed and remanded in part and affirmed in part.
NOTES
[1] By this time, J.C.'s sister L.C. had reached the age of 18 and graduated from high school. L.C. attends a local community college and continues to reside with her stepmother.
[2] In light of the results reached herein, we need not address the jurisdiction of the trial court to amend the order on appeal.
[3] Section 57.081(1) reads in pertinent part that:

When the person is represented by an attorney, the affidavit [of indigency] shall be supported by a written certificate signed by the attorney representing the person that he has made an investigation to ascertain the truth of the applicant's affidavit and he believes it to be true; that he has investigated the nature of the applicant's position and in his opinion it is meritorious as a matter of law; and that he has not been paid or promised payment of any remuneration for his service and he intends to act as attorney for applicant without compensation... .