CANADY, Judge,
Concurring specially.
I agree with the majority’s determination that the declaratory judgment in favor of the appellees should be affirmed. I write separately to explain the basis for my conclusion that the Hospital Board is entitled to sovereign immunity under section 768.28. Because I disagree with vari *265 ous aspects of the majority’s opinion, I have refrained from joining that opinion. In particular, I disagree with the majority’s repeated characterization of the underlying declaratory judgment action as an “unusual action,” as well as its statement that “the complex issues presented by this action for declaratory relief were not fully litigated.” I also disagree with the majority’s expressed unwillingness to announce a “rule of law” concerning the issue of statutory interpretation decided in this case.
In this concurring opinion, I will first comment briefly on my disagreement with the majority’s opinion. Then, I will outline the issues presented by the parties. Finally, I will set forth the analysis which supports my conclusion that the trial court’s decision should be affirmed.
I. THE MAJORITY OPINION
The majority acknowledges that the issue of whether the declaratory judgment action “was an improper lawsuit to resolve [the sovereign immunity] affirmative defense” raised in the underlying tort action by the Pagans is not at issue in this appeal. Nonetheless, the majority persists in calling into question the propriety of the declaratory judgment action. In my view, on the record before us, this is totally unwarranted.
Section 86.011, Florida Statutes (2002), provides, in pertinent part, that a “court may render declaratory judgments on the existence or nonexistence (l)[o]f any immunity, power, privilege or right.” (Emphasis added.) The issue of whether a particular entity is entitled to sovereign immunity appears to fall squarely within the express provision of section 86.011. Where the status of an entity under section 768.28 has been challenged or is otherwise in doubt, it does not seem at all “unusual” for that entity to seek a declaratory judgment concerning its status. See Haines City v. Allen, 509 So.2d 982, 988 (Fla. 2d DCA 1987) (discussing “declaratory judgment action asking the circuit court to declare the city’s rights with regard to sovereign immunity under section 768.28”); see also Strachan Shipping Co. v. Spigner, 573 So.2d 926, 927 (Fla. 1st DCA 1991) (“The determination of the existence of an immunity [under the workers’ compensation law] is an appropriate subject for declaratory relief.”).
Similarly unwarranted is the majority’s statement that “the complex issues presented by this action for declaratory relief were not fully litigated.” The dispositive issue of whether First Physicians Group was an instrumentality of the Hospital Board wás extensively litigated. There is no suggestion in the record that either the appellants or the appellees were in any way foreclosed from fully developing any factual issues that they deemed material to the critical legal issues that they chose to present to the trial court. The majority states that “[w]e know very little about how these doctors practice medicine or how their employment by a nonprofit corporation created by a governmental entity affects that practice.” The majority also stresses that “we know virtually nothing about the lawsuit” brought by the Pagans. •Whatever, bearing facts related to such matters might have on some hypothetical issues that the parties have not presented, they have no demonstrated connection with the issues actually before the trial court and this court. It is hard to see how the details of the Pagans’ malpractice claim or facts concerning how the employee physicians “practice medicine” could have any relevance to the legal issue of whether the entity employing the treating physician was entitled to sovereign immunity under section 768.28. In short, I do not believe that the record before us is in any way deficient.
*266 Unlike the majority, I see no reason to shrink back from announcing as a rule of law that a corporate entity such as First Physicians Group, which was established by a sovereignly immune independent establishment of the state and which is subject to the type of control to which First Physicians Group is subject, is entitled to sovereign immunity. Such an announced rule is necessarily limited by the material facts of the case before us and the issues actually litigated. See Adelman Steel Corp. v. Winter, 610 So.2d 494, 502 (Fla. 1st DCA 1992) (“The holding or ratio deci-dendi of a decision is appropriately'defined as the outcome of the case on the precise points discussed in the opinion stated in terms of the facts found to be material to the court’s decision.”); see also Arthur L. Goodhart, Determining the Ratio Deciden-di of a Case, 40 Yale L.J. 161 (1930). The disposition of future cases presenting different material facts or raising different legal issues would, of course, not be bound by the rule announced in this case. But future cases presenting the same material facts and the same legal issues should be guided by the precedent established by this court’s decision of the instant case. I am concerned that the majority opinion may be rehd to suggest that the decision of this case will not have such precedential effect. Denying precedential effect to the decision of this case in future cases presenting similar facts and issues would, however, be inconsistent with the fundamental principle that like cases should be treated alike. See Gessler v. Dep’t of Bus. & Prof'l Regulation, 627 So.2d 501, 504 (Fla. 4th DCA 1993) (“The concept of stare decisis, by treating like case's alike and following decisions rendered previously involving similar circumstances, is a core principle of our system of justice.”).
II. ISSUES ON APPEAL
The Pagans argue that the Hospital Board’s control over First Physicians Group is insufficient for First Physicians Group to be considered an instrumentality of the Hospital Board. The Pagans contend that day-to-day operational control over a corporation is necessary to establish that the corporate entity is an instrumentality or agency under section 768.28(2). In making this argument, the Pagans rely on the case law articulating the requirement relating to control which is necessary to establish the existence of an employment or agency relationship. They also rely on the ease law addressing the circumstances in which piercing of the corporate veil is justified. They contend that the sovereign immunity of the hospital district extends to First Physicians Group only if First Physicians Group can be considered the “alter ego” of the hospital district. Finally, the Pagans argue that the extension of sovereign immunity to First Physicians Group — which they characterize as essentially a private medical practice — is inconsistent with the public policy underlying the sovereign immunity statute. The Pagans contend that the Hospital Board improperly “has, in effect, attempted to sell' its sovereign immunity to what is, for all practical 'purposes, a private medical practice.” This public policy argument was not specifically raised by the Pagans in the proceedings before the trial court.
The Hospital Board argues that it is the right of control, not actual day-to-day operational control, that is sufficient to establish that an entity is acting as an instrumentality or agency. The Hospital Board emphasizes its role in creating First Physicians Group, its power to dissolve First Physicians Group and to appoint and remove all the members of the First Physicians Group board of directors, as well as the role of its officers and employees in the management of First Physicians Group. *267 The Hospital Board argues that the Pagans should not be allowed to raise the public policy argument for the first time on appeal but that the extension of sovereign immunity to First Physicians Group is in any event not inconsistent with the public policy underlying section 768.28.
III. ANALYSIS
The hospital district is an “independent establishment of the state” which is sover-eignly immune from liability pursuant to the provisions of section 768.28. See El-dred, 498 So.2d 911, 913-14 (holding that the provisions of section 768.28 waiving sovereign immunity and limiting liability are applicable to hospital special taxing district as an independent establishment of the state under section 768.28(2)). The hospital district’s immunity is not disputed by the Pagans.
It is also well established that a physician employed by a sovereignly immune entity is entitled to the benefit of sovereign immunity. See Pub. Health Trust v. Valcin, 507 So.2d 596, 601 (Fla.1987); White v. Hillsborough County Hosp. Auth., 448 So.2d 2, 2 (Fla. 2d DCA 1983); Bates v. Sahasranaman, 522 So.2d 545, 546 (Fla. 4th DCA 1988); Jaar v. Univ. of Miami, 474 So.2d 239, 244 (Fla. 3d DCA 1985). No facts have been adduced to show that the physicians who practice with First Physicians Group are anything other than employees of First Physicians Group. The liability of the appellee physicians thus depends on the status of First Physicians Group. If First Physicians Group is subject to the protection of section 768.28, its physician employees are generally immune from liability for negligent acts performed within the scope of their employment. See § 768.28(9).
The parties agree that the dispositive question presented by this case therefore is whether First Physicians Group is entitled to sovereign immunity by virtue of its relationship with the Hospital Board. The answer to this question turns on the meaning of the phrase “corporations primarily acting as instrumentalities or agencies of the state” in section 768.28(2), which 'defines the entities entitled to sovereign immunity. I conclude that the undisputed facts concerning the relationship between First Physicians Group and the Hospital Board, an independent establishment of the state, establish that First Physicians Group is a “eorporation[ ] primarily acting as [an] instrumentalit[y] ... of the state.”
In some circumstances, the analysis of whether a corporate entity is an instrumentality or agency focuses on the extent to which the corporate entity has been given the authority and responsibility to carry out a management function that would otherwise be directly carried out through governmental officials. See Skoblow v. Ameri-Manage, Inc., 483 So.2d 809, 811, 812 (Fla. 3d DCA 1986) (holding that corporation, under contract with state “to provide direct management for” state hospital and to coordinate long-range planning for - the hospital, “was operating as an agency of the state”). Cf. Sebring Utils. Comm’n v. Sicker, 509 So.2d 968, 970 (Fla. 2d DCA 1987) (holding that utilities commission which was created in city charter as part of city government was entitled to sovereign immunity pursuant to section 768.28).
Generally, however, the analysis of whether a corporation is a governmental instrumentality or agency centers on the issue of control. In order for an entity to be considered an instrumentality or agency, it must be subject to something more than the sort of control that is exercised by the government in its regulatory capacity. See United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (holding that community action *268 agency, a nonprofit corporation established pursuant to the Economic Opportunity Act and subject to the federal standards and regulations, was not an instrumentality of the United States under Federal Tort Claims Act). The control that flows from a simple contractual arrangement between the government and a corporate entity ordinarily will not be considered sufficient to establish that the contracting corporate entity is an instrumentality or agency of the state. Cf. Mingo v. ARA Health Servs., Inc., 638 So.2d 85, 86 (Fla. 2d DCA 1994) (holding that contract defining corporate providers as independent contractors effectively “disavows [the corporation] as a corporation primarily acting as an instrumentality or agency of the state or its subdivisions”). And the mere fact that a corporation is created by the government will not necessarily establish that it is a governmental agency or instrumentality. See Doe v. Am. Red Cross, 727 F.Supp. 186 (E.D.Pa.1989) (holding that federally chartered corporation is not a government instrumentality).
The common understanding of the terms “agency” and “instrumentality” points — at least in a general way — to the type of governmental control necessary for a corporation to be entitled to sovereign immunity under section 768.28(2). An instrumentality is defined as “something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out,” or as “a part, organ, or subsidiary branch especially] of a governing body.” Webster’s Third International Dictionary 1172 (3d ed.1993). Agency has a similar meaning. It is defined as “a person or thing through which power is exerted or an, end is achieved,” or as “an establishment engaged in doing business for another.” Id. at 40.
Further guidance is provided by the ease law addressing the application of section 768.28. The two leading cases— Shands Teaching Hospital & Clinics, Inc., 478 So.2d 77, and Betterson, 648 So.2d 778 — -were both decided by the First District. In Shands the court concluded that the nonprofit corporation to which the State Board of Education leased the Shands Teaching Hospital was not entitled to the benefit of sovereign immunity. The corporate entity was determined to be “an autonomous and self-sufficient entity, one not primarily acting as an instrumentality on behalf of the state.” Shands, 478 So.2d at 79. In making this determination, the court interpreted the statutory provision governing the establishment of the nonprofit corporation — section 240.513, Florida Statutes (1985)' — -as “reflecting] that Shands’ day-to-day operations are not under direct state control.” Id. The court referred to the case law under the Federal Tort Claims Act, which states that “the critical factor ” in “... ‘determining whether an entity is a federal agency ... is the existence of federal government control over the “detailed physical performance” and “day to day operation” of that entity....’ United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976)’.” Id. (quoting Lewis v. United States, 680 F.2d 1239, 1240 (9th Cir.1982)).[7]
In Betterson, the court reached a different conclusion regarding the status of the nonprofit corporation entity — commonly known as PRIDE — which operated the prison industry program. Based on the *269 statutory provision requiring the Department of Corrections to “lease the prison industry program to a nonprofit corporation ‘organized solely for the purpose of operating’ the program,” the court determined that PRIDE had from its inception acted primarily as an instrumentality of the state. Id. at 780; see ch. 81-125, § 1, at 254, Laws of Fla.; § 946.502, Fla. Stat. (1988). While recognizing that under the statute “PRIDE was accorded substantial independence in the running of the work programs,” the court focused on the fact that PRIDE’s “essential operations nevertheless remained subject to a number of legislatively mandated constraints over its day-to-day operations.” Id. at 780. Among the constraints mentioned by the court were requirements that: (a) PRIDE’s sale to private entities be subject to approval by the governor; (b) PRIDE be subject to various regular state audits; (c) PRIDE’s policies and procedures relating to the use of inmates in its work program be subject to approval by the Department of Corrections; and (d) the state have a reversionary interest in property acquired by PRIDE relating to correctional work programs. The court stated: “These statutory constraints cumulatively constitute sufficient governmental control over PRIDE’s daily operations to require the conclusion as a matter of law that PRIDE has, from its inception, acted primarily as an instrumentality of the state.” Id. at 780-81.[8]
In both Betterson and Shands, the issue of control played a prominent part in the analysis of whether the nonprofit corporate entity was acting primarily as an instrumentality of the state. Both cases make reference to the significance of governmental control over the “day-to-day operations” of. the corporate entity whose status was at issue. See Betterson, 648 So.2d at 780 (referring to statute which “contained numerous provisions for extensive governmental control over PRIDE’s day-to-day operation”); Shands, 478 So.2d at 79 (referring to statutory provisions reflecting that “Shands’ day-to-day operations are not under direct state control”). There is, however, no bright line division between the “extensive governmental control” that was present in Betterson and the “direct [governmental] control” that was absent in Shands. The most that can be drawn from Betterson and Shands is that the “substantial independence” of any entity, coupled with significant governmental “constraints over [the entity’s] day-to-day operations,” Betterson, 648 So.2d at 780, will support a determination that the entity is an instrumentality, while “an autonomous and self-sufficient entity,” whose “day-to-day operations are not under direct [governmental] control,” Shands, 478 So.2d at 79, will not be considered an instrumentality.
In the case law — outside the sovereign immunity context — addressing the circumstances where a principal — agent relationship exists, the issue of control is also crucial. The cases make clear, however, that when analyzing the issue of control, the focus should be on “the right to control, rather than actual control.” Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla.2003) (citing Nazworth v. Swire, Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986) (“The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. More particularly, it is the right of control and not actual control, which determines *270 the relationship between the parties.”) (citations omitted)). Thus, the existence of a principal-agent relationship turns on whether the principal has a sufficient right of control and not on the extent to which the principal exercises actual control.
Although particular entities “may be deemed agents of the state, [and] not agencies of the state” under section 768.28(2), Sierra v. Associated Marine Insts., Inc., 850 So.2d 582, 592 (Fla. 2d DCA 2003), review denied, 869 So.2d 538 (Fla.2004), these general principles governing the existence of principle-agent relationships nonetheless shed light on the question at issue here. Just as an ordinary agency relationship can exist without the exercise of actual day-to-day control by the principal, so can a corporation be acting primarily as an instrumentality or agency of a sovereignly immune entity without that entity exercising actual control over the day-to-day operations of the corporation.
The Pagans argue that First Physicians Group should not be considered an instrumentality or agency under section 768.28(2) unless the Hospital Board’s control over First Physicians Group is such that the corporate veil could be pierced. This is nonsensical. It imputes to the legislature an intention to grant corporate entities immunity under section 768.28(2) only if those corporate entities are sham entities and if there is a showing of improper conduct in connection with the operation of the entities. See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1117, 1121 (Fla.1984) (holding that “allegations of mere instrumentality and improper conduct clearly state a cause of action” for piercing the corporate veil and reviewing extensive case law “holding] that the corporate veil may not be pierced absent a showing of improper conduct”). A “mere instrumentality” or “alter ego” which is used as a “sham” and for some improper purpose is in an entirely different category from an entity acting primarily as a governmental instrumentality or agency. The type of control necessary to establish that a corporation is being used as a “sham” and “alter ego” or “mere instrumentality” is entirely different from the control necessary to establish that a corporate entity is entitled to immunity pursuant to section 768.28(2).
It would be unfaithful to the plain meaning of section 768.28(2) to impose a requirement for control of a type that is inconsistent with the separate corporate existence of the entity acting primarily as an instrumentality or agency. The authorization of immunity for corporations under section 768.28(2) necessarily involves a recognition that those corporations will carry out their operations in a manner that is separate and distinct from the operations of the governmental entity to which they are related. The control of the governmental entity over the corporation necessary to establish an instrumentality relationship under section 768.28(2) does not require that the corporation be subsumed in the governmental entity. The Pagans’ argument to the contrary would effectively rewrite section 768.28(2).
First Physicians Group rightly points out that since, the public policy argument raised by the Pagans was not presented to the trial court it is not properly argued on appeal. See Tillman v. State, 471 So.2d 32, 34 (Fla.1985) (“In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.”); Dober v. Worrell, 401 So.2d 1322, 1324 (Fla.1981) (holding that it is “inappropriate for [an appellant] to raise an issue- for the first *271 time on appeal from summary judgment ); Clock v. Clock, 649 So.2d 312, 315 (Fla. 3d DCA 1995) (“[A]n appellate court will not consider any ground for objection not presented to the trial court; review is limited to the specific grounds raised below.”). Such an unpreserved issue cannot be the basis for reversal of the judgment entered by the trial court.
All the efforts of the Pagans to establish that First Physicians Group is not an instrumentality or agency of the Hospital Board run aground on the reality of the Hospital Board’s undeniable right to control the operations of First Physicians Group. First Physicians Group began its existence as a creature of the Hospital Board, and it carries out its ongoing operations as a creature of the Hospital Board. The Hospital Board effectively directs the management of First Physicians Group through the appointment of all the members of the board of directors of First Physicians Group and by the placement of the chief executive officer of the Hospital Board’s health care system in the position of president of First Physicians Group. The Hospital Board’s authority to direct the management of the ongoing operations of First Physicians Group strongly supports the conclusion that First Physicians Group is an “intermediary ... through which [the] functions of a controlling force are carried out,” Webster’s, supra, at 1172, and thus properly considered an “instrumentality” as that term is commonly understood. See also Lebron v. Nat’l R.R. Passenger, 513 U.S. 374, 399-400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (holding that “when the State has specifically created [a] corporation for the furtherance of governmental objectives[ ] and ... controls the operation of the corporation through its appointees .... [t]he corporation is part of the Government for purposes of the First Amendment”). There is no basis for concluding that First Physi-dans Group acts as an autonomous and self-sufficient entity.” Shands, 478 So.2d at 79. On the contrary, First Physicians Group is subject to significant governmental “constraints over [its] day-to-day operations.” Betterson, 648 So.2d at 780.
IV. CONCLUSION
I therefore conclude that the trial court correctly decided as a matter of law that First Physicians Group is an instrumentality of the Hospital Board. First Physicians Group and the appellee physicians thus are entitled to sovereign immunity under section 768.28.

. Although the fact is not mentioned by the Shands court, the statute provided for the “governance of the nonprofit corporation by a board of directors appointed by the President of the University of Florida and chaired by the Vice President for Health Affairs of the University of Florida.’’ § 240.-513(3)(b)(l).

. Although it was not mentioned by the Better-son court, the statute also required a showing that "[t]he members of the corporation were appointed by the Governor and confirmed by the Senate.” § 946.504(5)(a)(l).